**STATE of Missouri, Respondent,**

v.

**Sterling J. ROBINSON, Appellant.**

**No. WD 44490.**

Missouri Court of Appeals,
Western District.

April 14, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
June 2, 1992.

Application to Transfer Denied
July 21, 1992.

Scott Albers, Sedalia, for appellant.

Jeff Mittelhauser, Pros. Atty., Sedalia, for respondent.

Before LOWENSTEIN, C.J., and BRECKENRIDGE, P.J., and HANNA, J.

BRECKENRIDGE, Judge.

Sterling Robinson appeals from his conviction, after jury trial, of assault in the third degree, § 565.070, RSMo 1986,[1] for which he was sentenced to forty-five days in the county jail and given a fine of $250.00. In his appeal Mr. Robinson claims that the trial court erred in: (1) not allowing defense counsel to question the jury panel as to possible bias against men who hit women; (2) not allowing reference to certain allegations the defense made about the victim to be presented in the opening statement as a motive for Mr. Robinson's actions; and (3) forbidding defense counsel from asking certain questions during cross-examination of the victim. The judgment is affirmed.

On October 16, 1990, Sterling Robinson ran into his former girlfriend and her niece at a Price Chopper grocery store. He struck his former girlfriend, causing her to fall down and, while she was on the floor, he continued to hit and kick her. Mr. Robinson admitted the assault at trial, testifying that previously the victim had lied to him, spread lies about him and was observed by him in the company of a man he described as a "pimp." The jury returned a verdict finding Mr. Robinson guilty of assault in the third degree and assessed a punishment of imprisonment in the county jail for forty-five days and a fine to be determined by the trial court. The jury acquitted him on another count of assault in the third degree wherein he was charged with assaulting his former girlfriend's niece. The trial court sentenced defendant to forty-five days in the county jail and imposed a $250.00 fine. Mr. Robinson appeals.

Prior to addressing each individual point raised by Mr. Robinson on appeal, it is noted that all of his points relate to his attempt to bring before the jury the prior bad acts or conduct of the victim, his former girlfriend, and his resulting aggravation and frustration with the victim which

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise stated.

were his motivation for the assault. Mr. Robinson's attempts to raise such issues during voir dire, his opening statement and cross-examination of the victim were objected to by the prosecution as being irrelevant. The prosecutor's basis for his assertion of irrelevance was that such conduct occurred six to eight months prior to the assault and, even if true, would not give rise to any legal defense to the crime charged. As set out below, the trial court properly ruled that such matters were irrelevant and would introduce improper issues into the case. Despite these rulings made by the trial court before Mr. Robinson took the stand, Mr. Robinson was permitted to testify, without objection, to such matters.

■ In his first point, Mr. Robinson alleges that the trial court improperly prevented defense counsel from asking questions of prospective jurors during voir dire designed to elicit their feelings about violence between men and women. Counsel told the jury a story of his sister who had felt that she deserved a black eye given to her by her boyfriend. Defense counsel then asked, "what could she have done to deserve a black eye? Anybody here who has an idea of what—what she meant by that, because she was very sincere. She felt that she deserved a black eye." The prosecution objected to this question and the trial court sustained the objection. Defense counsel also told the court, out of the hearing of the jury, that he intended to ask concerning his sister "was she right or wrong in thinking that she deserved a black eye?" and "can a woman, quote, 'have ever, quote, have it coming' unquote?"

Defense counsel was allowed to explore the issue in depth, however, when one of the male jurors, Patrick Wagner, disclosed his strong feelings on the subject of men who hit women. After defense counsel again attempted to frame an acceptable question, the trial court questioned the jury on the matter. The court inquired:

I'm going to ask one question, ladies and gentlemen. Of course, Mr. Robinson is a man and the alleged victims are females. Is that fact—Would that cause anyone to disregard the instructions and the law as presented by the Court and the evidence as it's presented, or, knowing that, that the alleged victims are females and the defendant is a male, are you still able to follow the instructions of the law as presented and the evidence as you find it in reaching a verdict? Would you be prevented in any way from doing that because of the difference in sexes? Is there anyone who would feel that they could not follow the instructions or the law because of the difference in sexes?

The silence of the jury panel members is assumed to be negative responses to the questions asked. Defense counsel still did not feel that the court had adequately covered the subject but the court refused counsel's request to ask further questions as to the issue of bias.

■ It is a litigant's right to discover bias and prejudice on the part of prospective jurors through the process of voir dire and a litigant should be allowed a wide latitude in his search for open-minded persons to serve as jurors. *State v. Finch*, 746 S.W.2d 607, 613 (Mo.App.1988). This right is not exercised unchecked, however. The trial court is vested with broad discretion in supervising voir dire. *State v. Carter*, 771 S.W.2d 844, 845 (Mo.App.1989).

Control of the nature and scope of questions on voir dire examination of veniremen is lodged in the discretion of the trial court, and an appellate court will interfere with the exercise of that discretion only when the record shows a manifest abuse of that discretion and a real probability of injury to the complaining party. *State v. Hobby*, 706 S.W.2d 232, 233 (Mo.App.1986).

*State v. Lottmann*, 762 S.W.2d 539, 540 (Mo.App.1988). No such manifest abuse of discretion is demonstrated in the record of the instant case. Defense counsel's questions alerted venireman Patrick Wagner to the type of response that defense counsel was hoping to elicit. His possible bias and prejudice was explored in the presence of other potential jurors who heard defense counsel tell Mr. Wagner, "That's exactly the kind of response I was hoping to get,

sir." Furthermore, the trial court explicitly asked the panel whether the difference in the sexes between Mr. Robinson and the victims would cause them not to follow the law or the instructions. Given the trial court's careful inquiry, no prejudice can be shown. Point I is denied

In Point II, Mr. Robinson alleges that the trial court erred by not allowing counsel to comment upon the victim's character and prior conduct as motive for the assault during his opening statement. Counsel wished to inform the jury, through the device of opening statement, that the victim used drugs; was seen by Mr. Robinson on several occasions in the company of a local pimp; interfered with Mr. Robinson's job; had taken money from him; and had lied to him.

The control of the opening statement lies within the sound discretion of the trial court. *State v. Ivory*, 609 S.W.2d 217, 222 (Mo.App.1980). The purpose of opening statement is informational; it is not a test of sufficiency of the evidence but a device wherein the nature of the case, the anticipated evidence and its significance is generally presented to the court and jury. *State v. Harris*, 731 S.W.2d 846, 849 (Mo.App.1987). Defense counsel should limit the opening statement "to a brief outline of the issues and the matters which counsel believes the competent and admissible evidence will support." *Id.* at 849–50.

In the instant case, defense counsel improperly tried to argue that Mr. Robinson was frustrated and incensed by the victim's past bad actions. Even had such past actions of the victim been relevant, defense counsel's proffered statement about the victim is best characterized as argument and, as such, improper to opening statement. *State v. Hamilton*, 740 S.W.2d 208, 211 (Mo.App.1987). Furthermore, even had there been an abuse of the trial court's discretion in failing to allow defense counsel to comment upon Mr. Robinson's motive, Mr. Robinson's own testimony as to his perception of the victim's misuse of him and her bad acts, sufficiently cured any claimed prejudice. Point II is denied.

In Point III, Mr. Robinson complains that the trial court erred by not allowing cross-examination of the victim with questions designed to test her accuracy, veracity, credibility and character. Specifically, defense counsel proposed to question the victim as to whether she lied to Mr. Robinson; took Mr. Robinson's money to buy drugs; and lied about seeing another man. Defense counsel made an "offer of proof" as to these questions; he did not cross-examine the victim.

It is an elementary tenet of law that evidence as to a victim's character is inadmissible except in specific instances. For example, when self-defense is asserted, a victim's reputation for violence is generally admissible on the question of who was the aggressor. *State v. Williams*, 784 S.W.2d 309, 312 (Mo.App.1990). Even this exception to the general rule is constrained. *Id.* See also *State v. Toland*, 708 S.W.2d 293 (Mo.App.1986). As early as 1853, Missouri recognized this elementary rule of law, finding no error in the exclusion of a victim's "bad and dangerous character" when the victim of the assault was being unoffensive at the time of the assault. *State v. Jackson*, 17 Mo. 544 (1853). It should also be noted that defense counsel was not denied the right of cross-examination; he chose not to cross-examine the victim. His "offer of proof" consisted of questions he wished to ask the victim. He did not make an offer as to the answer to these questions or why said questions were relevant. Point III is denied.

The judgment is affirmed.

All concur.